UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHIDI COSMOS ABAKPORO,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL VISA CENTER, et al.,<br><br>Defendants. | CASE NO. 2:23-cv-00739-JHC<br><br>MEMORANDUM OPINION RE: MOTION FOR A TEMPORARY RESTRAINING ORDER |

On July 20, 2023, this Court issued an order denying Plaintiff's motion for a temporary restraining order (TRO). Dkt. # 11. In that order, the Court stated that it would provide its reasoning in a forthcoming memorandum opinion. *Id.* at 1. The Court hereby enters this memorandum opinion explaining its denial of Plaintiff's motion for a TRO.

**I**

**Background**

Plaintiff Chidi Cosmos Abakporo is a lawful permanent resident of the United States. Dkt. # 6 at 2. He has applied for "F2A" preference category visas for his wife and children who live in Nigeria. *Id.* at 1. Before they can receive those visas, however, the United States

Embassy or consulate in Nigeria must conduct an interview with his wife and children. To date, no interview has been scheduled. *See generally id.*

Plaintiff's application has a "priority date" of April 12, 2019. Dkt. # 9 at 5. While the application is now "current" because its priority date is before the visa bulletin's current cut-off date of September 8, 2020, the visa bulletin is scheduled "retrogress" on August 1, 2023. Dkt. # 6 at 1–5, Dkt. # 8 at 7; *see generally* U.S. Citizenship and Immigr. Serv., *Visa Retrogression*, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression (last visited July 24, 2023). On that date, the visa bulletin will retrogress to a cut-off date of October 7, 2017. Dkt. # 8 at 6. This means that the application's priority date will no longer be current, and Plaintiff's family will not be eligible for a visa until the priority date becomes current once again. According to the government, there are about 758 pending applicants who are ahead of Plaintiff's case in the embassy's interview scheduling queue. Dkt. # 10 at 3.

Plaintiff filed this action in May 2023, naming the National Visa Center, the United States Department of State, and the United States Embassy and Consulate in Nigeria as Defendants (collectively, Defendants or the government). Dkt. # 3.[1] The complaint primarily asserts that the government's unreasonable delay in scheduling a consular interview with Plaintiff's family and failure to adjudicate their application is unlawful under the Administrative Procedure Act (APA). The complaint also contains a Declaratory Judgment Act claim, seeking a declaration that the government's failure to act is unlawful.

On July 18, 2023, Plaintiff filed a motion for a temporary restraining order. Dkt. # 6. The motion asks this Court to order the U.S. Department of State to schedule his family's

---

[1] The complaint is labeled as a "complaint for writ of mandamus." Dkt. # 3 at 1.

interview by July 21, 2023, and to adjudicate the visa application before August 1, 2023. Dkt. # 6 at 1, 2, 5. As of August 1, 2023, when the Visa Bulletin retrogresses, Plaintiff's priority date will no longer be current, meaning that his family will have to wait until the priority date is again deemed current before they can obtain visas.

The government opposes the motion and filed a response. Dkt. # 7 (Notice of Intent to Oppose Motion), Dkt. # 8 (government's response brief).

On July 20, 2023, the Court denied the motion for a temporary restraining order. Dkt. # 11. The Court stated that it would provide its reasoning in a forthcoming memorandum opinion.

## II

## LEGAL STANDARD

When evaluating a request for a TRO, courts apply the same factors as used to evaluate a request for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO, a plaintiff must show that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The first two factors are the most important. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The third and fourth factors typically "merge when the Government is the opposing party." *Id.* at 435. As a form of relief analogous to a preliminary injunction, a TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. 7, 22 (2008). The Ninth Circuit applies a "sliding scale" approach, in which a stronger showing as to one or more factors can outweigh weaker showings as to other factors. *See Recycle for Change v. City of Oakland*, 856

F.3d 666, 669 (9th Cir. 2017); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief." *Dawson v. Asher*, 447 F. Supp. 3d 1047, 1050 (W.D. Wash. 2020) (citing *Winter*, 555 U.S. at 22). And when a moving party seeks a "mandatory" TRO that alters the status quo, the plaintiff's burden is "doubly demanding," so the plaintiff must "establish that the law and facts *clearly* favor her position." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

**III**

**DISCUSSION**

Plaintiff is not entitled to a TRO.

The first factor—likelihood of success on the merits—does not favor relief. As an initial matter, Plaintiff asks the Court to compel various federal agencies to affirmatively act. Specifically, Plaintiff asks the Court to order the U.S. Department of State to schedule a consular interview for his wife and children by July 21, 2023 (three days after Plaintiff filed this motion) and adjudicate the family's visa applications before August 1, 2023. This request goes beyond the maintenance of the status quo—it seeks to obligate another party to take an action. Accordingly, Plaintiff must show not only a likelihood of success on the merits, but that "the law and facts *clearly* favor [his] position." *Garcia*, 786 F.3d at 740; *see also Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) (when a party "seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction."); *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (a motion for mandatory preliminary relief "is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.").

Plaintiff has not carried his burden to make a clear showing of his likelihood of success on the merits. A district court's review of an agency's alleged inaction under the APA is fairly narrow in scope. Under Section 706(1) of the APA, a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). "A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 63–64 (2004)). "If the agency does have a clear duty to act, and Congress has not prescribed a deadline for the action, the question becomes whether the agency's delay is unreasonable." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecommunications Rsch. and Action Ctr. v. F.C.C. ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984)).

Based on the briefing before the Court, Plaintiff has not shown that the U.S. Department of State and other Defendant agencies violated a specific, unequivocal command to interview Plaintiff's family or issue an immigration decision by a certain date. *Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *3 (W.D. Wash. Apr. 5, 2023) ("[T]he Court can find no statutory or regulatory obligation requiring the State Department to schedule a consular interview by a date certain."); *Borzouei v. Bitter*, No. 22-CV-872-MMA (KSC), 2022 WL 17682659, at *5 (S.D. Cal. Dec. 14, 2022) ("[N]either the statute nor the regulations set forth a timeline for visa application processing."); *Tekle v. Blinken*, No. 21-CV-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) ("Congress did not provide a statutory deadline to

complete processing or adjudication of visa applications. In fact, Congress has given the agencies wide discretion in the area of immigration processing." (citation and quotation marks omitted)). Nor has Plaintiff demonstrated that the "*TRAC*" factors, *see Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 & n.7 (9th Cir. 1997), support his claim, as the motion does not address them. *See generally* Dkt. # 6 (Plaintiff's motion); Dkt. # 8 at 11–17 (the government's application of the *TRAC* factors). Ultimately, Plaintiff does not explain why he is likely to prevail on the merits.

As this Court previously stated, "the Court is troubled by the retrogression of the visa bulletin, as well as the opaque and apparently confusing nature of the immigration visa system in general for applicants." *Datta v. Jaddou*, No. 2:22-CV-1302-JHC, 2022 WL 4547018, at *2 (W.D. Wash. Sept. 29, 2022). Nevertheless, Plaintiff "ha[s] not shown that the facts and law clearly favor [his] position such that issuance of a TRO would be appropriate." *Id.*

The second factor—irreparable harm—does not support Plaintiff's request for a TRO. Plaintiff argues that on August 1, 2023, the visa bulletin will retrogress, which will cause a delay in processing the immigration applications of his wife and children. *See generally* Dkt. # 6. But Plaintiff's wife and children "will not lose their priority dates" or their "place in the immigration visa queue." *Datta*, 2022 WL 4547018, at *2. Plaintiff's family may still be interviewed and processed in the future—though more delayed than Plaintiff might hope—when the cut-off date again covers their priority date. And should Plaintiff ultimately succeed on the merits of his claim, the Court may order Defendants to process their applications. *See Sampson v. Murray,* 415 U.S. 21, 90 (1974) (harm is irreparable when it cannot be undone by a later order of the court). The Court empathizes with Plaintiff's situation: He has been separated from his family for years and may continue to be separated. But given Plaintiff's failure to show a likelihood of success on the merits, the harms alleged are not sufficient to justify a TRO.

The last two factors—the balance-of-equities and public-interest factors—similarly do not tip in Plaintiff's favor. *See Nken*, 556 U.S. at 435 (last two factors merge when the government is the opposing party). First, granting Plaintiff the relief he seeks would be inequitable: It would require the U.S. State Department to interview and process his family before about 758 pending applicants who are ahead of his family in the queue. Dkt. # 10 at 3; *see also Throw*, 2023 WL 2787222, at *5 ("[I]t would be inappropriate to direct that Plaintiff[] 'jump the queue.' The State Department has limited resources and thousands of pending applicants waiting for their interview." (citation and quotation marks omitted)); *Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *6 (N.D. Cal. June 16, 2021) ("Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain."). Second, the TRO Plaintiff seeks could disrupt the functioning of the United States visa system by intruding upon agency discretion and by potentially forcing the agencies to violate certain statutory obligations (*e.g.*, the obligation to process visas in chronological order). *See Datta*, 2022 WL 4547018, at *3. Third, as discussed above, Plaintiff has not shown that he is likely to succeed on the merits, so a TRO would be inappropriate even if another factor tipped in Plaintiff's favor. *See Germon v. Times Mirror Co.*, 520 F.2d 786, 788 (9th Cir. 1975) ("Because [Plaintiff] failed to sustain his burden of showing a likelihood of success on the merits, we need not consider the issue of irreparable injury since [Plaintiff] would not be entitled to the relief sought even if he were to prevail on this issue.").

## IV

## CONCLUSION

For the reasons above, the Court DENIES Plaintiff's motion for a Temporary Restraining Order. Dkt. # 6. The Court recognizes the challenges faced by individuals who await agency action on their immigration applications. The Court also recognizes the hardship that delays in adjudication may cause. But Plaintiff has not overcome the high bar required for immediate injunctive relief.

Dated this 25th day of July, 2023.

John H. Chun
United States District Judge